UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:11CV-00093-JHM

HEATHER ROSE CURRY											PLAINTIFF

VS.

GOODWILL INDUSTRIES OF KENTUCKY, INC.
d/b/a GOODWILL INDUSTRIES OF KENTUCKY						DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, Goodwill Industries of Kentucky, Inc., for summary judgment [DN 24] and on a motion by Plaintiff, Heather Rose Curry, to exceed the page limits for her response [DN 27]. Fully briefed, these matters are ripe for decision.

**I. STANDARD OF REVIEW**

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "*specific facts* showing

there is a *genuine* issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

Plaintiff, Heather Rose Curry, was hired by Defendant, Goodwill Industries of Kentucky, on February 8, 2008, as the Manager of the Goodwill Center in Campbellsville, Kentucky. She was a salaried employee. Plaintiff testified that on July 22, 2009, she informed her immediate supervisor Lennea Wooten, Donated Goods Manager of Goodwill of Kentucky's Western Division, of her need to take medical leave due to a hysterectomy. (Heather Curry Dep. at 93.) Plaintiff further testified that she told both of her assistant managers and John Wade, Vice-President of the Western Division of Goodwill Industries, of her need for a hysterectomy. (Id. at 95-98.) According to Plaintiff, on July 28-30, 2009, at a center manager conference in Louisville, Kentucky, Wooten expressed dissatisfaction with the news of Plaintiff's surgery due to the fact that Wooten would have to work the store in place of Plaintiff while Plaintiff was on leave. (Id. at 79, 101, 137.) Wooten also inquired if Plaintiff was sure she was going to have the surgery. (Id. at 100-101.)

On July 31, 2009, Plaintiff informed Katharine Burns, Division Secretary of Goodwill Industries of Kentucky, that she would need leave pursuant to the Family and Medical Leave Act ("FMLA") for the surgery. (Curry/Burns Emails 7/31/09.) By letter dated July 31, 2009, Burns sent Plaintiff the FMLA paperwork along with a letter indicating that "[o]n July 31, 2009, we became aware that you need time off from work under circumstances that may qualify for leave under the Family and Medical Leave Act." (7/31/09 Burns Letter at 1.)

Plaintiff testified that on August 12, 2009, she attempted to return her written request for FMLA to Wooten at a division meeting in Bowling Green, and Wooten advised her to hold onto the paperwork and turn everything in at once. (Curry Dep. at 100-101.) Plaintiff further testified that Burns changed the return date for the health care certification from 8/15/2009 to 8/28/2009 due to issues surrounding the date of the surgery.[1] (Id. at 129-131.) Plaintiff testified that she faxed her completed FMLA paperwork on August 17, 2009, to Goodwill's division office in Bowling Green.[2] Later that same day, Wooten informed Plaintiff that she was being laid off due to a decrease in sales until further notice. (Id. at 82-83.) Plaintiff testified that she contacted Burns on August 18, 2009, to ensure that the FMLA paperwork had been received. According to Plaintiff, Burns informed her that the paperwork had been received and that Wooten and Wade would make the decision as to whether or not FMLA leave would be granted. The record further reflects that on August 19, 2009, Dr. Lynval Reynold's office completed the "Certification of Health Care Provider" form.

By letter dated August 17, 2009, John Wade terminated Plaintiff's employment. Specifically, the letter provided:

> This is to advise that Lennea Wooten, your Immediate Supervisor, has recommended your termination with Goodwill Industries Works for violating Goodwill's Personnel Policy, K-4, Rules of Conduct, Sections (i) refusing the [sic] obey instructions or obvious resistance to the authorized granted by Goodwill to supervisors and management staff; (r) refusal to accept job assignments; (s) inefficiency in job performance; and (t) falsifying records. These are sufficient grounds for disciplinary action and/or discharge.

---

[1] Burns testified that she did not change the return date for the health care certification. (Burns Dep. at 29.)

[2] While the document indicates that the fax occurred on August 17, 2009, at 8:18 a.m., Burns testified that she received the faxed form at 7:31 a.m. on August 18, 2009. (Burns Dep. at 34.)

3

> It has been brought to my attention that your signed timesheet does not coincide with the actual times you were working at the center. Your falsification and the signing of your timesheet is detrimental to your employer.

(August 17, 2009, Termination Letter.) Prior to this letter, Plaintiff had never received any discipline regarding her work, her store had received a number of record breaker awards, and she received a raise due to her good performance on her annual review. (Curry Dep. at 137-138.)

According to Defendant, Plaintiff was terminated for falsifying her time records. Specifically, Wooten stated that Plaintiff was expected to work at the Campbellsville, Kentucky, Center over the weekend of August 8th and 9th, 2009. Defendant claims that Plaintiff misrepresented to Wooten and to Goodwill through her signed time sheet that she had worked 9.75 hours that weekend, when in fact she had worked only a couple of hours. (See Disciplinary Action Form, 8/17/2009.) Plaintiff testified that during the weekend she worked not only at the Donated Goods Center in Campbellsville, but she also passed out flyers regarding a live broadcast with a giveaway on August 17, 2009, at the Center. (Heather Curry Aff. at ¶ 2; April Ball Aff. at ¶ 4.) Plaintiff testified that Wooten was aware that Plaintiff would be passing out flyers over the weekend and arranged for a traveling assistant, Susan Sobel, to work at the Campbellsville Center with Plaintiff. (Curry Dep. at 188-190.) Wooten denies any knowledge of the flyer or that she arranged for Sobel to work in Campbellsville the weekend of August 8th-9th. (Wooten Dep. at 148-151, 175-178.)

On August 27, 2009, Wade denied Plaintiff's request for leave under the Family and Medical Leave Act because "Goodwill has no obligation to provide a leave of absence under the FMLA Act . . . to a former employee." (Aug. 27, 2009, FMLA Denial Letter.) As a result of her denial of leave and termination, Plaintiff filed this action on June 17, 2011, against Goodwill Industries of

4

Kentucky, Inc., asserting claims of interference and retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601. Defendant filed this motion for summary judgment arguing that (1) Plaintiff failed to state a *prima facie* case in her claims of interference and retaliation under the FMLA and (2) Plaintiff failed to prove that the Defendant's legitimate, non-discriminatory reason was pretextual. The Court considers these arguments in turn.

### III. DISCUSSION

The Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, entitles qualifying employees up to twelve weeks of unpaid leave each year "to care for a spouse, child, or parent with a 'serious health condition' or if the employee has a 'serious health condition' that renders the employee unable to perform the functions of his job." Payne v. Goodman Mfg. Co., L.P., 726 F. Supp. 2d 891, 898 (E.D. Tenn. 2010)(citing 29 U.S.C. § 2612(a)(1)(C)-(D)). A "serious health condition" is a condition that requires inpatient care or continuing treatment by a health care provider. 29 U.S.C. § 2611(11). "To invoke the protections of the FMLA, an employee must give his employer adequate notice and a qualifying reason for requesting FMLA leave." Payne, 726 F. Supp. 2d at 898 (citing Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004); Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 723-24 (6th Cir. 2003)). It is unlawful for employers to either interfere with the rights afforded employees by the FMLA or retaliate against employees for exercising their FMLA rights. 29 U.S.C. § 2615(a). The Sixth Circuit recognizes two distinct theories for recovery under the FMLA: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." Hoge, 384 F.3d at 244. The Sixth Circuit applies the Title VII burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973), to both FMLA interference and retaliation

claims where, as here, there is no direct evidence of unlawful conduct. Donald v. Sybra, Inc., 667 F.3d 757, 762 (6th Cir. 2012); Jaszczyszyn v. Advantage Health Physician Network, 2012 WL 5416616, *7 (6th Cir. Nov. 7, 2012). Thus, if a plaintiff satisfies the *prima facie* case as to either an interference or retaliation claim under the FMLA, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. Gates v. U.S. Postal Service, 2012 WL 4902851, *4 (6th Cir. Oct. 16, 2012). If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretextual. Id. Plaintiff filed suit under both theories.

### A. *Interference Theory*

"Interference" or "entitlement" claims arise under 29 U.S.C. § 2615(a)(1), which provides, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." To establish a *prima facie* case for an interference claim, an employee must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled. See Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005) (citing Cavin, 346 F.3d at 719). "Employees seeking relief under the entitlement theory must therefore establish that the employer's violation caused them harm." Edgar v. JAC Products, Inc., 443 F.3d 501, 508 (6th Cir. 2006)(citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)("[Section] 2617 provides no relief unless the employee has been prejudiced by the violation ....")). Defendant claims that Plaintiff cannot meet either the third or fifth element of the *prima facie* case.

**1. Entitlement to Leave**

An employee is entitled to leave under the FMLA when she has "a serious health condition that makes [her] unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). Curry's need for a hysterectomy was a serious health condition. See 29 U.S.C. § 2611(11) (defining "serious health condition" as "an illness ... that involves ... inpatient care ... or continuing treatment by a health care provider"). Her surgery would require inpatient care, continuing treatment by a health provider, and a recovery period of six weeks. Defendant does not dispute that Plaintiff had a "serious health condition." Instead, Defendant argues that Plaintiff was not entitled to FMLA because she did not return the health care certification document to Goodwill by August 15, 2009. The Court rejects Defendant's argument.

Although federal regulations enable employers to "require an employee to comply with [its] usual and customary notice and procedural requirements for requesting leave," 29 C.F.R. § 825.302(d), the Sixth Circuit has held that "FMLA does not permit an employer to limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA." Harrigan v. Dana Corp., 612 F. Supp. 2d 929, 942-943 (N.D. Ohio 2009)(citing Cavin, 345 F.3d at 720). "Therefore, if an employee properly invokes FMLA, [her] employer's internal policies do not apply to the extent that they conflict with or are more stringent than FMLA requirements." Id. (citing Cavin, 346 F.3d at 723; Walton v. Ford Motor Co., 424 F.3d 481, 486 (6th Cir. 2005); Maynard v. Total Image Specialists, Inc., 478 F. Supp. 2d 993, 1000 (S.D. Ohio 2007); Marrero v. Camden County Bd. of Soc. Servs., 164 F. Supp. 2d 455, 463-64 (D.N.J. 2001) ("[W]here an employer's internal policies conflict with the provisions of the FMLA, the FMLA controls and an employee

need only comply with the requirements of the Act to invoke its protections.").

Here, the FMLA requires an employee to deliver the health care certification "in a timely manner." 29 U.S.C. § 2613(a). The regulations allow an employee to submit the health care certification up to 15 calendar days after the employer's request, "unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification." 29 C.F.R. § 825.305(b). Thus, in the present case, there is a genuine dispute as to whether Goodwill extended Plaintiff's deadline for return of the health care certification from August 15, 2009, to August 28, 2009, or requested her to hold onto the paperwork and turn it in at one time. Additionally, even accepting Defendant's argument that Plaintiff was required by Goodwill to return the health care certification no later than August 15, 2009, a question would exist as to whether it was practicable under the circumstances to do so. Finally, despite Defendant's argument to the contrary, there is sufficient evidence to suggest that Dr. Reynold's office completed and faxed the required health care certification to Goodwill on August 19, 2009. Under the regulations in question, "[i]n the case of foreseeable leave, if an employee fails to provide certification in a timely manner as required by § 825.305, then an employer may deny FMLA coverage **until the required certification is provided**." 29 C.F.R. § 825.313(a) (emphasis added). See also Killian v. Yorozu Automotive Tennessee, Inc., 454 F.3d 549, 555 (6th Cir. 2006)(Sixth Circuit precedent suggests that even if Plaintiff failed to provide certification in a timely manner, Defendant's remedy was delaying Plaintiff's leave, not termination). Considering the facts in light most favorable to Plaintiff, the health care certification was provided to Defendant prior to Plaintiff's foreseeable leave date; thus, the employer could not deny FMLA coverage for the untimely health care certification pursuant to

8

29 C.F.R. § 825.313(a).

Finally, the record reflects that Goodwill's stated reason for denial of Plaintiff's leave under the FMLA was because Plaintiff was terminated, not because her health care certification was late or because Goodwill did not receive her health care certification. In fact, Kathy Burns testified that it did not have anything to do with her documents being late, "[s]he was denied because she was terminated." (Burns Dep. at 52.)

For these reasons, the Court finds that Plaintiff has satisfied the third factor of her *prima facie* case.

### 2. Employee Denied FMLA Benefits

Defendant argues that Plaintiff cannot produce any evidence to make a *prima facie* showing of the fifth element of an FMLA interference claim – that Goodwill denied Plaintiff FMLA benefits to which she was entitled. The Sixth Circuit has acknowledged that "the right to non-interference with medical leave . . . is not absolute." Arban v. West Publishing Corp., 345 F.3d 390, 401 (6th Cir. 2003). Accordingly, "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." Id.; Edgar v. JAC Products, Inc., 443 F.3d 501, 508 (6th Cir. 2006) ("interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.")

In examining the fifth element, the Sixth Circuit held that "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." Wysong v. Dow

9

Chemical Co., 503 F.3d 441, 447 (6th Cir. 2007). The Sixth Circuit continued by noting that 29 C.F.R. § 825.220(c) prohibits employers from using "the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." Id. See also Marbrey v. Jewish Hosp., 2012 WL 3273621, *4 (W.D. Ky. Aug. 10, 2012).

Viewing the facts in the light most favorable to Plaintiff, the Court finds that a reasonable trier of fact could conclude that Defendant interfered with Plaintiff's FMLA rights. Plaintiff requested leave under the FMLA on July 31, 2009, from Defendant for a hysterectomy that was to take place at the end of August or middle of September. Prior to her formal notice via email to Katharine Burns, Plaintiff testified that she communicated her need for a hysterectomy to her immediate supervisor, Wooten, who expressed dissatisfaction with the news of Plaintiff's surgery due to the fact that Wooten would have to work the store in place of Plaintiff while Plaintiff was on leave. Additionally, before receiving her letter of termination for numerous violations of company policy, Plaintiff had never received any disciplinary reports regarding her work, her store had received a number of record breaker awards, and she had received a raise due to her good performance on her annual review. Further, a genuine dispute of fact exists concerning whether Wooten and Wade actually terminated Plaintiff for the alleged falsification of her time records for August 8th or 9th, or whether the alleged violations of company policy were manufactured in an effort to prevent her FMLA-protected leave.[3]

For these reasons, the Court finds that Plaintiff set forth sufficient evidence to establish her

---

[3]Defendant argues that because Wade as the decision-maker was not aware of Plaintiff's FMLA leave request, Plaintiff cannot establish the fifth element *prima facie* case. For the reasons set forth below in the Court's discussion of Plaintiff's retaliation claim, the Court rejects this argument.

*prima facie case* for the FMLA interference claim.

### B. Retaliation Theory

Plaintiff argues that the Defendant retaliated against her for exercising her FMLA rights in violation of 29 U.S.C. § 2615(a)(2). "The issue in an FMLA retaliation claim is whether an employer retaliated or discriminated against an employee because the employee invoked her FMLA rights." Brady v. Potter, 476 F. Supp. 2d 745, 758 (N.D. Ohio 2007). "To establish an initial *prima facie* case of retaliation, a plaintiff must show the following by a preponderance of the evidence: '(1) [she] engaged in an activity protected by the [FMLA]; (2) that this exercise of [her] protected rights was known to the defendant; (3) that defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.'" Morris v. Family Dollar Stores of Ohio, Inc., 320 Fed. Appx. 330, 338 (6th Cir. 2009)(quoting Arban, 345 F.3d at 404). Defendant claims that Plaintiff cannot establish the second element of her *prima facie* case.

The second element of the prima facie case – the "knowledge" element – mandates that Plaintiff show that the person or persons responsible for her termination knew that she was exercising her rights under the FMLA. See Scott v. Eastman Chem. Co., 275 Fed. Appx. 466, 482 (6th Cir. 2008) ("[I]t is fairly clear from Sixth Circuit case law that employer knowledge of a plaintiff's protected activity is required. . . . [E]ven to prove a causal connection, [the plaintiff] must establish that the decisionmakers . . . had knowledge of the protected activity, as one cannot retaliate against an employee for engaging in protected activity unless he knew the employee had done so."). To make such a showing, a plaintiff need not rely exclusively on direct evidence; circumstantial evidence will suffice. Mulhall v. Ashcroft, 287 F.3d 543, 552 (6th Cir. 2002).

The Court rejects Defendant's argument that since Wade as the decision-maker was not aware of Plaintiff's FMLA leave request at the time he terminated her employment, Plaintiff cannot establish the second element of her *prima facie* case. First, a genuine dispute of material fact exists as to whether Wade knew of Plaintiff's need for FMLA leave. See Crane v. Monterey Mushroom, Inc., 2012 WL 5835833, *18 (E.D. Tenn. Nov. 16, 2012). Plaintiff testified that in addition to notifying Katharine Burns who works for John Wade in the division office in Bowling Green of her need for FMLA leave, she also informed Wade of her need for a hysterectomy at a conference prior to July 31, 2009.

Second, even accepting Defendant's argument that Wade was not aware of Plaintiff's FMLA leave request, "'courts have imputed the retaliatory intent of a subordinate to an employer in situations where the subordinate exerts significant influence over the employment decision.'" Algie v. Northern Kentucky University, 2013 WL 624396, *7 (E.D. Ky. Feb. 20, 2013)(quoting Long v. Teachers' Ret. Sys. of Illinois, 585 F.3d 344, 351 (7th Cir. 2009) (citations omitted)(citing Romans v. Michigan Dept. of Human Services, 668 F.3d 826 (6th Cir. 2012) (discussing the "cat's paw" doctrine in the context of a Title VII claim); Madden v. Chattanooga City Wide Serv. Dept., 549 F.3d 666 (6th Cir. 2008) (same)). In the present case, Plaintiff has presented evidence that Wooten, her direct supervisor, was aware of her request for FMLA leave, that Wooten instructed her to notify Burns, that Wooten created the list of company policy violations relied upon by Wade for termination, that Wooten investigated the alleged incident regarding the falsification of the time sheet, that Wooten submitted the Disciplinary Action Form that accused Plaintiff of falsifying her time sheet, and that Wooten recommended Plaintiff's termination. Wade testified that he relied upon the recommendation and documentation of Wooten to terminate Plaintiff. In fact, Wooten

acknowledged that Wade had never terminated a center manager without Wooten's recommendation for termination. (Wooten Dep. at 59.)

Viewing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff has submitted sufficient evidence to establish that the person responsible for her termination knew that she was exercising her rights, or that her supervisor, via her recommendation of disciplinary action, exerted significant influence over the employment decision. Algie, 2013 WL 624396, *7-*8. Thus, Plaintiff has established her *prima facie* case of retaliation.

### C. *Legitimate, Non-Discriminatory Reason and Pretext*

The Court finds that Defendant has offered a legitimate, nondiscriminatory explanation for Plaintiff's termination– that Curry falsified her time sheets, or, in the alternative, that Goodwill had a good-faith belief that Curry falsified her time sheets. Thus, the burden shifts back to Plaintiff to prove that the explanation is a mere pretext for unlawful retaliation. To establish pretext, a plaintiff must show that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir.1994) (overruled on other grounds, Geiger v. Tower Automotive, 579 F.3d 614 (6th Cir. 2009)).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that a genuine dispute of material fact exists as to whether the reason articulated by Defendant for Plaintiff's termination was a pretext for unlawful interference or retaliation. The temporal proximity between Curry's request for FMLA leave and her termination, coupled with additional evidence, gives rise to an inference that the reason proffered by the Defendant is a pretext. Curry was terminated 17

13

days after officially notifying her employer of her need for FMLA leave.[4]  Further, the record reflects that prior to Curry's termination, she had never received a disciplinary action, she had earned a raise for her work performance, and her store had earned awards.  Additionally, it is undisputed that prior to July 31, 2009, Wooten did not have any written documentation about Plaintiff's poor work performance or falsification of time records.  Instead, the documentation presented to and relied upon by Wade in August of 2009 to support Wooten's recommendation to terminate Plaintiff was created over four months after some of the events occurred and only after Curry requested FMLA leave.  In fact, Wooten admitted in her deposition that some of the dates contained in the written documentation presented to Wade were incorrect and that she did not prepare the document until after Curry requested leave under the FMLA. (Wooten Dep. at 133-136.)

Furthermore, a reasonable jury could discount Wade and Wooten's testimony regarding their reason for terminating Plaintiff and credit Plaintiff's testimony that she did not falsify her time records, that Wooten was actually aware of Plaintiff's activities on August 8th and 9th, that Wooten did not want to have to cover the Campbellsville Center for six weeks, and that the reason for Plaintiff's termination – the alleged falsification of time records -- was manufactured in an effort to prevent Curry from exercising her FMLA leave.  "Ultimately, whether a jury chooses to believe the [plaintiff or defendant's] version of events depends on the credibility of each party's witnesses, and credibility determinations are for the jury to decide." Ercegovich v. Goodyear Tire & Rubber Co.,

---

[4]"Unlike its role in establishing a *prima facie* case, 'the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.'" Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 285 (6th Cir. 2012) (quoting Donald v. Sybra, Inc., 667 F.3d 757, 763 (6th Cir. 2012)).  However, the Sixth Circuit found that "'suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence.'" Id. (citing Bell v. Prefix, Inc., 321 Fed. Appx. 423, 426 (6th Cir. 2009)).

154 F.3d 344, 354 (6th Cir. 1998)(citing Wells v. New Cherokee Corp., 58 F.3d 233, 237 (6th Cir.1995)). Thus, the Court finds that genuine disputes of material fact exist as to whether Defendant's nondiscriminatory reason for terminating Plaintiff was pretextual.

For these reasons, the Court denies summary judgment in favor of Defendant on Plaintiff's FMLA interference and retaliation claims.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Goodwill Industries of Kentucky, for summary judgment [DN 24] is **DENIED** and the motion by Plaintiff, Heather Rose Curry, to exceed the page limits [DN 27] is **GRANTED**.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

April 8, 2013